IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KYNAN A. SHANTZ,                                    6:17-cv-01149-BR

            Plaintiff,                             OPINION AND ORDER

v.

COMMISSIONER, Social Security
Administration,

            Defendant.

SHERWOOD J. REESE
DREW L. JOHNSON
Drew L Johnson, P.C.
1700 Valley River Drive
Eugene, OR 97401
(541) 434-6466

            Attorneys for Plaintiff

BILLY J. WILLIAMS
United States Attorney
RENATA GOWIE
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204
(503) 727-1011

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**SARAH ELIZABETH MOUM**
Special Assistant United States Attorneys
Office of General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2936

          Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Kynan A. Shantz seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

On July 10, 2013, Plaintiff filed his applications for DIB. Tr. 10.[1] Plaintiff alleged a disability onset date of February 1, 2012. Tr. 10. His application was denied initially and on reconsideration. On March 8, 2016, an Administrative Law

---

[1] Citations to the official transcript of record filed by the Commissioner on November 22, 2017, are referred to as "Tr."

Judge (ALJ) held a hearing.  Tr. 38-68.  At the hearing Plaintiff
was represented by an attorney.  Plaintiff and a vocational
expert (VE) testified at the hearing.

On May 18, 2016, the ALJ issued a decision in which he found
Plaintiff is not disabled and, therefore, is not entitled to
benefits.  Tr. 10-23.  On June 27, 2017, the Appeals Council
denied Plaintiff's request to review the ALJ's decision, and the
ALJ's decision became the final decision of the Commissioner.
Tr. 1-3.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On July 24, 2017, Plaintiff filed a Complaint in this Court
seeking review of the Commissioner's decision.


## BACKGROUND

Plaintiff was born on April 25, 1974, and has some college
education.  Tr. 21, 207.  Plaintiff alleges disability since
February 1, 2012, and was last insured through December 31, 2017.
Tr. 10, 12.  Plaintiff alleges disability due to chronic lumbar
strain; chronic tendonitis at the Achilles insertion point;
excessive prominence posterior right calcaneous post op; right-
hip muscular strain; patellofemeral strain both knees; left-hip
muscular strain; dysthymic disorder; and muscular/skeletal
injuries to his feet, knees, and hips.  Tr. 206.

Except as noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the

medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 12-21.


**STANDARDS**

The initial burden of proof rests on the claimant to
establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th
Cir. 2012).  To meet this burden a claimant must demonstrate his
inability "to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which . . . has lasted or can be expected to last for
a continuous period of not less than 12 months."  42 U.S.C.
§ 423(d)(1)(A).  The ALJ must develop the record when there is
ambiguous evidence or when the record is inadequate to allow for
proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d
881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d
453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.  42
U.S.C. § 405(g).  *See also Brewes v. Comm'r*, 682 F.3d 1157, 1161
(9th Cir. 2012).  Substantial evidence is "relevant evidence that
a reasonable mind might accept as adequate to support a
conclusion."  *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v.
Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  It

is "more than a mere scintilla" of evidence but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## **DISABILITY ANALYSIS**

Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act. *Keyser v. Comm'r of Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011). *See also Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. § 404.1520. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner

determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). *See also Keyser,* 648 F.3d at 724.

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout v. Comm'r Soc. Sec Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii); *Keyser*, 648 F.3d at 724.

At Step Three the Commissioner must determine whether a claimant's impairments meet or equal one of the listed impairments and are so severe that they preclude substantial gainful activity. The claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R.

§ 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis when the ALJ is determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).  *See also Keyser,* 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also Keyser,* 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since February 1, 2012, his alleged onset date. Tr. 12.

At Step Two the ALJ found Plaintiff has the severe impairments of "status post surgeries of the right ankle, lumbar degenerative disc disease, and bilateral hip strain." Tr. 12.

At Step Three the ALJ found Plaintiff does not have an impairment or combination of impairments that meet or equal the criteria for any impairment in the Listing of Impairments. Tr. 15-16. The ALJ found Plaintiff has the RFC to perform light work with the following limitations: lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for six hours in an eight-hour work day, and sit for six hours in an eight-hour work day. The ALJ also found Plaintiff can frequently balance; occasionally stoop, kneel, crouch, and crawl; frequently perform overhead reaching with both arms; and frequently handle, finger, and feel with both hands. The ALJ

also found Plaintiff is precluded from working around extreme cold conditions, working with machinery that causes vibrations, working at unprotected heights, working with heavy machinery, and operating a vehicle as part of the day-to-day job. Tr. 16.

At Step Four the ALJ found Plaintiff is unable to perform his past relevant work. Tr. 21.

At Step Five the ALJ found Plaintiff could perform jobs that exist in significant numbers in the national economy such as electronics worker, electrical-accessories assembler, and storage-facility rental clerk. Tr. 22. Accordingly, the ALJ found Plaintiff is not disabled and, therefore, is not entitled to benefits. Tr. 22.

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) failed at Step Two to include Plaintiff's conditions of gout and polyarticular joint pain[2] as a severe impairment; (2) failed to provide clear and convincing reasons for rejecting Plaintiff's testimony; (3) improperly rejected the lay-witness statements of Christina

---

[2] "Gout" is a condition resulting from monosodium urate crystals in tissue usually in and around joints and most often causing acute arthritis. "Polyarticular joint pain" is pain in multiple joints caused by gout. *Merck Manual, Professional Edition* (www.merckmanuals.com). Plaintiff sometimes refers to both gout and polyarticular joint pain and sometimes refers to only gout. For purposes of this Opinion, the Court will use the term "gout" to include polyarticular joint pain.

Shantz, Plaintiff's wife; (4) gave less than "great weight" to the Veteran's Administration (VA) determination that Plaintiff is disabled; and (5) failed at Step Five to include all of Plaintiff's functional limitations in his evaluation of Plaintiff's RFC.

The Commissioner contends (1) the ALJ's finding at Step Two that Plaintiff's gout was a nonsevere impairment is supported by substantial evidence in the record, and, in any event, any error was harmless; (2) the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective symptom testimony; (3) the ALJ provided legally sufficient reasons for discounting the lay-witness's statements; (4) the ALJ properly considered and discounted the VA's opinion and provided valid reasons for doing so; and (5) the ALJ properly assessed Plaintiff's RFC and, as a result, did not err at Step Five.

## I.   The ALJ's failure to include gout as a severe impairment at Step Two was harmless error.

Plaintiff contends the ALJ erred when he failed to include Plaintiff's gout as a severe impairment at Step Two.  Plaintiff asserts the medical evidence together with Plaintiff's testimony are sufficient to establish these impairments as severe.

The Commissioner contends the ALJ properly found Plaintiff's gout symptoms to be nonsevere impairments based on the medical evidence.  The Commissioner also argues even if the ALJ erred, his error was harmless inasmuch as the ALJ resolved Step Two in

Plaintiff's favor and continued the sequential analysis.

**A.    Standards**

The Step Two inquiry is a *de minimis* screening device to dispose of groundless claims. *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)(Step Two inquiry intended to identify claimants whose medical impairments are so slight that it is unlikely they would be found disabled).

The claimant bears the burden to provide medical evidence to establish at Step Two that he has a severe impairment. 20 C.F.R. § 404.1512. An impairment or combination of impairments is not severe "if it is merely a slight abnormality" that has "no more than a minimal effect" on an individual's ability to work. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

The ALJ is required to consider the combined effect of all of the claimant's impairments on his ability to function without regard to whether each alone is sufficiently severe. *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir.2003). *See also Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir.1996); 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 416.923. If the ALJ determines a claimant is severely impaired at Step Two, the ALJ continues with the sequential analysis and considers all of the claimant's limitations. SSR 96-9p, available at 1996 WL 374184 (July 2, 1996). Step Two is "merely a threshold determination of whether

the claimant is able to perform his past work." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007). If an ALJ fails to consider limitations imposed by an impairment at Step Two but considers them at a later step in the sequential analysis, any error at Step Two is harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). *See also Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

**B.    Analysis**

The ALJ found Plaintiff's gout is nonsevere on the ground that Plaintiff's symptoms improved on medication and were "transient and not ongoing." Tr. 13. The ALJ relied on Plaintiff's testimony at the hearing that his gout was under control with medication and that he had only four major flare-ups of his symptoms during the past year, which lasted only "a week or two." Tr. 13, 56.

Plaintiff was first diagnosed with gout in 2009. Tr. 13, 539, 583.

On April 7, 2014, Plaintiff was treated at the VA Medical Center by Thomas Kinane, M.D., a primary-care physician, for complaints of wrist pain. Tr. 539. The records indicate Plaintiff had been experiencing "almost continuous gouty symptoms for the past 4 months" and his gout was "fairly aggressive." Tr. 539-40. The treatment plan included Prednisone and delayed initiation of Allopurinol. Tr. 540.

On April 19, 2014, J. Wendling, D.O., a consultative physician, examined Plaintiff. Tr. 364-70. At that time Plaintiff was experiencing a gout flare in his right wrist. Dr. Wendling stated Plaintiff "will feel significantly better and a fair amount of his polyarticular joint pain will improve greatly if not completely resolved with adequate treatment of his gout." Tr. 369-70. Dr. Wendling assessed a maximum standing/walking capacity of up to six hours with no other functional limitations. Tr. 369.

On August 11, 2014, Plaintiff was treated by Rashmi Shah, M.B.B.S., a rheumatologist at the VA Medical Center. Tr. 632. At that time Plaintiff reported he had experienced six or seven attacks in the past six months, and each attack lasted from two or three days to two or three weeks. Dr. Shah noted Plaintiff had pain and swelling associated with redness in multiple joints and had been "on and off" Allopurinol for the last five years. Although Plaintiff's uric acid level had decreased since April 2014, he continued to have pain in his wrist and knee. Tr. 632. Dr. Shah noted Plaintiff had limited range of motion with minimal effusion and warmth in his right wrist and limited range of motion and pain on flexion of his left ankle with minimal effusion. Tr. 634. Dr. Shah recommended Plaintiff continue taking Allopurinol and also start taking Colchicine to lower his uric acid levels. Dr. Shah noted "even

with well controlled uric acid levels and Colchicine" Plaintiff could "expect few gouty flares as [he] has a longstanding [history] of uncontrolled gout."  Tr. 634.

In October 2014 Plaintiff was again treated at the VA Medical Center for swelling in his left knee that he had experienced for two or three days and right knee and ankle swelling that he had experienced for two or three weeks, all of which decreased with rest.  Tr. 635.  His left knee was aspirated and showed crystals that confirmed gout.  Tr. 635-36.

In November 2014 Thomas Kinane, M.D., another treating physician at the VA, attributed Plaintiff's acute gout to the fact that Plaintiff had discontinued using Prednisone.  Tr. 506.

In January 2016 Dr. Shah noted Plaintiff experienced symptoms in multiple joints at different times, including his ankles, toes, wrists, thumbs, and elbows.  Tr. 13, 592.  Dr. Shah also noted Plaintiff had "a significant reduction in frequency of attacks from 2 attacks a month to 1 attack a month to 1 attack every 6 months."  Tr. 13, 593.  Kenneth Scalapino, M.D., another treating physician at the VA, attributed Plaintiff's "excellent uric acid control" to his use of Allopurinol.  Tr. 596.

Tests in February 2016 showed abnormal liver findings, and Norbert Gerondale, M.D., a treating physician at the VA, advised Plaintiff to discontinue the use of Allopurinol.  Tr. 13, 686.  Plaintiff testified he has taken Prednisone when his

symptoms flare, but Prednisone is harmful to his liver.
Tr. 49.

Although Plaintiff's symptoms are better when controlled with medications, the evidence supports the fact that his symptoms recur and last anywhere from two or three days to two or three weeks.

On this record the Court concludes the ALJ erred when he failed to include Plaintiff's gout as a severe impairment in light of the frequency and length of his symptoms, which are supported by objective medical evidence.

Nevertheless, even if the ALJ erred by failing to find gout to be a severe impairment, the Ninth Circuit has held any error in failing to designate a specific impairment as severe does not prejudice a claimant if the ALJ has resolved Step Two in the claimant's favor. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)(any error at Step Two in finding an impairment nonsevere is harmless when Step Two is resolved in the claimant's favor).

Accordingly, the Court concludes any error by the ALJ at Step Two when he found gout was not a severe impairment was harmless because the ALJ found Plaintiff has other severe impairments and continued the sequential analysis.

**II.   The ALJ did not err when he found Plaintiff's testimony was not fully credible.**

Plaintiff contends the ALJ did not provide clear and

convincing reasons for discounting Plaintiff's testimony.

The Commissioner, however, contends substantial evidence in the record supports the ALJ's partial rejection of Plaintiff's subjective symptoms testimony.

## A. Standard

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments and show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  799 F.2d 1403, 1407 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id.*  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id.* (quoting *Lester*, 81 F.3d at 834).

**B.  Analysis**

Plaintiff testified at the hearing that "his biggest problem would be a lack of being able to be on any sort of [work] schedule" because "he can't control when different problems will occur and how often they occur" and the problems can last "one day or it could last two weeks."  Plaintiff stated the more he exerted himself, the worse it would hurt later.  Tr. 42. Plaintiff testified on a bad day he spends his time on the floor or in bed, which prevents him from performing many activities. Tr. 50.  As noted, Plaintiff also testified his gout is under better control and major flare-ups are not as frequent when he is on medication, but the "minor ones have still been around." Tr. 56.

The ALJ concluded Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms "are not entirely consistent with the medical evidence and other evidence in the records" and Plaintiff's activities "suggest[] that his limitations are not as significant as alleged."  Tr. 17, 19.

The ALJ relied on Dr. Wendling's consultative report of April 19, 2014, that Plaintiff had a normal gait and full strength in his lower extremities.  Tr. 17.  The ALJ also relied on x-rays taken in 2014 that showed Plaintiff had only a mild decrease in "disc space height" at L4-L5 and imaging of

Plaintiff's hip was negative. Tr. 17. In June 2015 Plaintiff had full lumbar and hip range of motion, and he had normal motor, sensory, and deep tendon reflexes even though he was walking with a cane. Tr. 19. In June 2015 Plaintiff received a steroid injection in his right hip for pain. Tr. 479. In September 2015 Plaintiff reported relief from the steroid injection in June had lasted about two months. Tr. 471.

The ALJ also concluded Plaintiff's activities of daily living were inconsistent with his alleged limitations. For example, Plaintiff reported caring for his children, helping them with homework, and preparing meals even though Plaintiff received some assistance from his wife and a babysitter in caring for his children. Tr. 17, 220. Plaintiff also did household chores, laundry, cleaning, driving, and shopping. Tr. 222.

On this record the Court concludes the ALJ did not err when he partially discounted Plaintiff's symptom testimony because the ALJ provided clear and convincing reasons for doing so.

## III. The ALJ gave germane reasons for discounting lay-witness evidence.

Plaintiff contends the ALJ erred when he failed to give reasons that are germane to the lay-witness statements of Christina Shantz, Plaintiff's wife, regarding Plaintiff's impairments and limitations.

The Commissioner contends the ALJ properly discounted the

lay-witness statement of Christina Shantz for the same reasons that the ALJ found Plaintiff's testimony was not fully credible.

## A.    Standards

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001).  The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1054 (9th Cir. 2006). Nevertheless, an ALJ is not required to address each lay-witness statement or testimony on an "individualized, witness-by-witness-basis.  If the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue,* 674 F.3d 1104, 1114 (9th Cir. 2012)(quotation omitted).

Germane reasons for discrediting a witness's testimony include inconsistency with the medical evidence and the fact that the testimony "generally repeat[s]" the properly discredited testimony of a claimant.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  *See also Williams v. Astrue*, 493 F. App'x 866 (9th Cir. 2012).

## B.    Analysis

In October 2013 Christina Shantz stated in her Third-

Party Function Report that Plaintiff takes a long time to get up and to get his joints moving in the morning; that he is always stiff and sore; that he will be in bed for two or three days when he strains his back; and "the pain was too much" for him without his medication. Tr. 230. Christina Shantz also indicated she helps Plaintiff with day-to-day activities, including taking care of their baby and other household chores. Tr. 231. She stated Plaintiff "does just a little bit at a time throughout the day 2 to 3 days a week." Tr. 232. She indicated Plaintiff's symptoms affected his ability to lift, squat, bend, stand, walk, sit, climb stairs, complete tasks, and follow instructions. Tr. 235. She also stated Plaintiff's symptoms affected his ability to concentrate and to understand.

The ALJ stated he considered the report of Christina Shantz regarding Plaintiff's activities. As noted, the ALJ found Plaintiff's activities "suggest that his limitations are not as significant as alleged" and "the reported severity . . . is not consistent with the objective medical evidence." Tr. 19-20. The ALJ again noted Dr. Wendling's evaluation of Plaintiff as having full motor strength in his upper and lower extremities and only slightly limited grip strength at the same time that he was experiencing a gout flare. The ALJ also discounted Christina Shantz's report for the same reasons that he found Plaintiff's testimony was not fully credible and the fact that treatment

improved Plaintiff's gout symptoms. Tr. 20.

On this record the Court concludes the ALJ gave "germane" reasons for discounting the lay-witness statements of Christina Shantz.

## IV. The ALJ did not err when he did not give "great weight" to the VA's disability determination.

Plaintiff contends the ALJ failed to give "great weight" to the VA's determination that Plaintiff is disabled as required by *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

The Commissioner, however, contends the ALJ's evaluation of the VA's disability determination is supported by substantial evidence in the record.

### A. Standard

A Social Security disability determination is similar to a VA disability determination in that both are made by federal agencies that provide benefits to those who cannot work due to disability. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). "[A]lthough a VA rating of disability does not necessarily compel the SSA to reach an identical result, 20 C.F.R. § 404.1504, the ALJ must consider the VA's finding in reaching his decision." *Id.* An ALJ ordinarily must give "great weight" to a VA determination of disability. An ALJ, however, is not compelled to reach an identical result. *Id. See also* 20 C.F.R. § 404.1504 ("A decision by any . . . other governmental agency about whether you are disabled . . . is based on its rules

and is not our decision. . . . We must make a . . .
determination based on social security law. Therefore, a
determination made by another agency . . . is not binding on
us."). If the ALJ gives less than "great weight" to a VA
disability determination, however, he must provide "persuasive,
specific, valid reasons for doing so that are supported by the
record." *McCartey*, 298 F.3d at 1076.

**B.    Analysis**

In June 2013 the VA determined Plaintiff has "one
service connected disability currently rated at 50 percent
(dysthymic disorder) along with additional disabilities to bring
[his] combined disability rating to 90 percent." Tr. 179-80.
The "additional disabilities" included residuals of a foot
injury, chronic lumbar strain, and limited flexion of the knees
and thigh. Tr. 179, 353. Plaintiff contends there is not any
evidence in the current record by an examining or treating
physician that contradicts the VA's conclusion regarding
Plaintiff's disability.

Although the ALJ cited *McCartey* in his opinion, he gave
"little weight" to the VA's disability decision because "it is
not consistent with the overall record." Tr. 20. The ALJ
concluded the VA's 50% disability rating for Plaintiff's
dysthymic disorder does not support a determination of disability
in this matter because the ALJ concluded Plaintiff's condition is

nonsevere. Tr. 14-15. The ALJ stated: "The [Plaintiff] is not taking any psychotropic medication for this condition, and continues to engage in a wide range of activities . . . which are not consistent with more than mild functional limitations." Tr. 20. The ALJ also found Plaintiff does not have a severe mental-health condition based on the opinion of Michael Dennis, Ph.D., a state-agency consultant, who found there was not any evidence to support such a limitation. Tr. 84-85.

The ALJ also concluded Plaintiff's current physical limitations are not consistent with the VA's disability rating. Tr. 20. For example, although the VA gave Plaintiff a 10% disability rating for chronic lumbar strain in its 2013 evaluation, the ALJ noted VA records dated June 20, 2015, indicated Plaintiff had normal motor and sensory functions, normal deep-tendon reflexes, and a full range of motion of his lumbar. Tr. 20, 427. In addition, the ALJ gave great weight to the opinion of Barry Cusack, M.D., a state-agency consultant who reviewed Plaintiff's records on April 29, 2014, and concluded Plaintiff had the RFC for light work and limitations consistent with an earlier evaluation by Susan B. Eder, M.D., another state-agency consultant, who found Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, could stand and or walk for about six hours in an eight-hour day, and could sit for about six hours in an eight-hour day. The ALJ noted

Dr. Cusack's findings were more recent and consistent with other medical evidence in the record. Tr. 21-22, 86-89.

On this record the Court concludes the ALJ provided "persuasive, specific, [and] valid reasons" for not giving "great weight" to the VA's disability determination. Accordingly, the Court concludes the ALJ did not err when he did not give "great weight" to the VA's disability determination.

**V. The ALJ did not err in his assessment of Plaintiff's RFC and, as a result, the ALJ did not err at Step Five.**

Plaintiff contends the ALJ failed to consider all of Plaintiff's limitations when the ALJ assessed Plaintiff's RFC. Specifically, Plaintiff contends the ALJ failed to include limitations based on Plaintiff's gout symptoms that would preclude him from employment, and, therefore, the ALJ erred at Step Five.

The Commissioner contends the ALJ's assessment of Plaintiff's RFC was based on substantial evidence in the record, and, therefore, the ALJ properly relied on the VE's testimony given in response to the ALJ's hypothetical that included Plaintiff's limitations as set out in the ALJ's assessment of Plaintiff's RFC.

**A. Standard**

As noted, at Step Five the ALJ must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). The ALJ may

satisfy this burden through the testimony of a VE.

"An ALJ must propound a hypothetical question that is based on medical assumptions supported by substantial evidence in the record that reflects all the claimant's limitations." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). "The hypothetical should be 'accurate, detailed, and supported by the medical record.'" *Id.* (quoting *Tackett*, 180 F.3d at 1101).

**B.   Analysis**

At the hearing the ALJ posed a hypothetical to the VE consistent with the ALJ's assessment of Plaintiff's RFC. The VE testified Plaintiff would not be able to perform his prior occupation as a marine mammal observer, but the VE concluded Plaintiff could perform work as an electronics worker, electrical-accessories assembler, and storage-facility rental clerk. Tr. 64-65.

Plaintiff contends the medical records support his testimony that he experiences symptoms from his gout that, without medication, cause significant pain in his wrists and limit his ability to perform activities according to a schedule and to maintain regular job attendance. Plaintiff argues, therefore, the VE's testimony that Plaintiff could perform other work based on an inaccurate hypothetical that did not include these limitations was erroneous.

As noted, Plaintiff has gout that was first diagnosed

in 2009. Over the years Plaintiff has experienced flare-ups in his symptoms that he reported to his doctors and subsequently received treatment with medications. Although the medical records contain Plaintiff's reports of his symptoms, the Court points out that the only assessed limitations of Plaintiff's functional abilities were made by Dr. Cusack and Dr. Eder, the state-agency consultants, and their limitations were included in Plaintiff's RFC as determined by the ALJ. There is not any evidence in the record that a treating physician assessed any limitation of functional abilities based on Plaintiff's condition.

In his hypothetical posed to the VE the ALJ is required to include only those limitations that are supported by substantial evidence in the record. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). "Conversely, an ALJ is not free to disregard properly supported limitations." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). In either case, the VE's "opinion has no evidentiary value" if the assumptions presented in the hypothetical are not supported by substantial evidence in the record. *Lewis v. Apfel*, 236 F.3d 503, 518 (9th Cir. 2001). Here the ALJ included in his hypothetical to the VE all of the "properly supported limitations" included in his evaluation of Plaintiff's RFC. Thus, the ALJ properly relied on the VE's testimony as to work

that Plaintiff could perform in the national economy.

On this record the Court concludes the ALJ did not err in his assessment of Plaintiff's RFC nor at Step Five in his reliance on the VE's testimony that was based on the limitations set out in the ALJ's assessment of Plaintiff's RFC.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the ALJ's decision and **DISMISSES** this matter pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED this 20th day of March, 2018.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States Senior District Judge